## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | CASE NO. | 23-50216 (JAM) |
| BRETT THORNTON, | ) | | |
| Debtor. | ) | CHAPTER: | 7 |
| | ) | | |
| ROBERT D. RUSSO, EXECUTOR OF THE | ) | | |
| ESTATE OF THOMAS F. THORNTON, | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | ADV. PRO. NO. | 23-05016 |
| | ) | | |
| BRETT THORNTON, | ) | ECF NO. | 14 |
| Defendant. | ) | | |
| | ) | | |

## MEMORANDUM OF DECISION AND ORDER
## GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

### I.      INTRODUCTION

Robert D. Russo, Executor of the Estate of Thomas F. Thornton (the "Plaintiff") seeks a

determination that a debt owed by the debtor Brett Thornton (the "Defendant") is non-

dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).  The Plaintiff moves for

summary judgment on all counts of the complaint in reliance upon the allegedly preclusive effect

of a 2017 jury verdict (the "2017 Jury Verdict") and subsequent judgments awarding damages

and attorney's fees.  For the reasons stated below, the Motion for Summary Judgment is

**GRANTED IN PART.**

### II.     JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the

instant proceeding pursuant to 28 U.S.C. § 1334(b).  The Bankruptcy Court derives its authority

to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District

Court's General Order of Reference dated September 21, 1984.  This is a "core proceeding"

pursuant to 28 U.S.C. § 157(b)(2)(I).  There is no constitutional issue precluding the exercise of jurisdiction in this case.  *Cf. Stern v. Marshall*, 564 U.S. 462, 487-99 (2011).

## III.    PROCEDURAL HISTORY

On April 11, 2023, the Defendant filed a Chapter 7 petition in this Court.  On July 11, 2023, the Plaintiff commenced this adversary proceeding by filing a three-count complaint seeking a determination that the debt owed by the Defendant is non-dischargeable (the "Complaint," ECF No. 1).  On September 5, 2023, the Defendant filed an Answer and Affirmative Defenses to the Complaint (the "Answer," ECF No. 5).  On October 31, 2023, the Plaintiff filed a Motion for Summary Judgment (the "Motion for Summary Judgment," ECF No. 14), a Brief in Support of the Motion for Summary Judgment (ECF No. 15), and a Statement pursuant to D. Conn. L. Civ. R. 56(a)(1) (the "Rule 56(a)(1) Statement," ECF No. 16).

The Defendant did not file a response or objection to the Motion for Summary Judgment. The Defendant also did not file a D. Conn. L. Civ. R. 56(a)(2) Statement.  Pursuant to D. Conn. L. Civ. R. 56(a)(1), each material fact set forth in a movant's Statement of Undisputed Material Facts and supported by the evidence "will be deemed to be admitted (solely for the purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule."  *See* D. Conn. L. Civ. R. 56(a)(1); *see also Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 745–47 (Bankr. D. Conn. 2014).  Therefore, the material facts set forth in the Plaintiff's Rule 56(a)(1) Statement supported by the evidence are deemed admitted.  *See* D. Conn. L. Civ. R. 56(a)(1).

## IV.    UNDISPUTED FACTS

The following are the undisputed facts relevant to the determination of the Motion for Summary Judgment.

1.  Thomas F. Thornton was the founder, president, and sole owner of Thornton International, Inc. ("Thornton") and Home Dental Care, Inc. ("Home Dental"), which companies were involved in the manufacture and distribution of dental floss.  (Rule 56(a)(1) Statement, ¶ 25.)  Following the death of Thomas F. Thornton, the Plaintiff was appointed as the executor of his estate. (Rule 56(a)(1) Statement, ¶ 26.)  On April 29, 2014, the Plaintiff was elected as the sole director, secretary, and treasurer of Thornton and Home Dental. (Rule 56(a)(1) Statement, ¶ 27.)  At the direction of the Plaintiff, the Defendant was elected President of Thornton and gained control of Home Dental.  (Rule 56(a)(1) Statement, ¶ 27.)  As President of Thornton, the Defendant ran Thornton and Home Dental for approximately thirteen months. (Rule 56(a)(1) Statement, ¶ 28.)

2.  The Defendant admits he owed a fiduciary duty to the Plaintiff and the related corporations, both as a former employee of the corporations and as President of Thornton and Home Dental until his removal and termination as an employee and as President.  (Rule 56(a)(1) Statement, ¶ 29; Answer, ¶ 49; Superior Court Action, Verified Answer to Amended Complaint, ¶ 17 (the "Verified Answer," ECF No. 1, Ex. 2).)

3.  The Defendant admits that he transferred assets from Thornton and Home Dental to his companies ProxySoft Worldwide, Inc. ("ProxyWorldwide") and ProxySoft Direct ("ProxyDirect"), including all tangible assets, physical assets, personal property and intangible assets, a dental floss machine that has been used in the manufacture of Thornton's and Home Dental's products for over twenty years, all business records including customer ledgers, customer records, customer lists, purchase orders, delivery records and production skills, raw materials, finished inventory, telephone and fax numbers, toll free numbers and related materials.  (Rule 56(a)(1) Statement, ¶ 34; Answer, ¶ 17.)  At least some of the assets described above were

transferred in April 2015, before the Defendant informed the Plaintiff he intended to start his own company.  (Rule 56(a)(1) Statement, ¶ 34.)

4.   The Defendant also admits he accepted orders on behalf of Thornton and Home Dental that upon his resignation were taken, fulfilled, and paid to his competing corporation, ProxyWorldwide. (Rule 56(a)(1) Statement, ¶ 33; Answer, ¶ 29.)  The Defendant also admits he had no right or authorization to direct the payment or the transfer of these orders to ProxyWorldwide, or deposit checks payable to Thornton into any account other than the Thornton account.  (Rule 56(a)(1) Statement ¶ 35; Answer, ¶ 31.)

5.   The Defendant also admits that he had no authorization to deposit checks payable to Thornton into any other account, to use Thornton corporate credit cards for personal expenses, to increase his salary and compensation, or to borrow money from Thornton or Home Dental for his competing corporation, ProxyWorldwide (Rule 56(a)(1) Statement, ¶35; Answer, ¶¶ 31 and 32.) The Defendant also admits that on May 4, 2015, after diverting funds and business from Thornton to his new corporations, he informed the Plaintiff by correspondence that he intended to start his own company conducting the same business as Thornton and Home Dental, and removed all assets of Thornton and Home Dental to ProxyWorldwide. (Rule 56(a)(1) Statement, ¶ 36; Answer, ¶ 16.)

6.   On May 14, 2015, the Plaintiff commenced an action in the Connecticut Superior Court (the "Superior Court") against the Defendant and several entities owned or controlled by the Defendant, including ProxyWorldwide and ProxyDirect.  *See Robert D, Russo, Executor of the Estate of Thomas F. Thornton et al. v. Brett Thornton et al.*, Docket No. FST-CV15-6025330-S (the "Superior Court Action.") (Rule 56(a)(1) Statement, ¶ 3.)

4

7.  The Superior Court Action complaint contained eight counts all relating to the Defendant's alleged diversion of corporate opportunities and removal of assets of Thornton and Home Dental, including: (i) breach of fiduciary duty; (ii) statutory theft under Conn. Gen. Stat. § 52-564; (iii) conversion; (iv) breach of the Connecticut Uniform Trade Secrets Act ("CUTSA"); (v) tortious interference with contracts and business expectancies; (vi) violation of the Lanham Act; (vii) seeking various injunctive relief; and (viii) violations of the Connecticut Unfair Trade Practices Act under Conn. Gen. Stat. § 42-110 *et seq.* (Rule 56(a)(1) Statement, ¶ 4.)

8.  The Superior Court Action amended complaint (the "Amended Verified Complaint," ECF No. 1, Ex. 1) alleged, and the Defendant admits in this adversary proceeding, among other things, that (i) at some point after April 4, 2014 and before May 4, 2015, the Defendant, while employed as President of Thornton and Home Dental, established ProxyWorldwide and ProxyDirect to engage in the same business as Thornton and Home Dental. (Rule 56(a)(1) Statement, ¶ 30; Amended Verified Complaint, ¶ 17; Answer, ¶ 9); (ii) in January 2015, the Defendant deposited eleven (11) checks to a bank account of Thornton Oral Care, LLC, a limited liability company solely within the Defendant's control, received as payment for orders placed with, fulfilled by, and made payable to Thornton (Rule 56(a)(1) Statement ¶ 32; Amended Verified Complaint, ¶¶ 17(N) and (D), 20(A)–(D); Answer, ¶ 27); and (iii) the Defendant accepted orders on behalf of Thornton and Home Dental that were, upon his ultimate resignation, taken, fulfilled, and payment received by ProxyWorldwide. (Rule 56(a)(1) Statement, ¶ 33; Amended Verified Complaint, ¶ 17(N)–(R), 20; Answer, ¶ 27.)

9.  In 2015, the Superior Court directed that the first five counts of the Amended Verified Complaint be tried to a jury, with the remaining counts to be reserved for a subsequent court trial.  (Rule 56(a)(1) Statement, ¶ 5.)

10.   On October 31, 2017, the 2017 Jury Verdict was returned against the Defendant as to

the claims of breach of fiduciary duty, statutory theft, conversion, breach of CUTSA, and

tortious interference with contract and business expectancies, which the court accepted and

recorded.  (Rule 56(a)(1) Statement, ¶ 7.)  The jury awarded a total of $3,592,000.00 in damages

as to the claims for breach of fiduciary duty ($1,721,000.00 award), statutory theft ($555,000.00

award), and tortious interference with contract and business expectancies ($1,316,000.00 award).

(Rule 56(a)(1) Statement, ¶ 7.)

11.   In reaching the 2017 Jury Verdict, the jury found the Defendant owed a fiduciary

duty to Thornton and Home Dental, both as a former employee and as President until his

removal and termination based upon the conduct alleged in the Amended Verified Complaint.

(Rule 56(a)(1) Statement, ¶ 28.)  The Defendant owed a fiduciary duty to the Plaintiff, Thornton,

and Home Dental during all relevant periods of conduct alleged by the Plaintiff.  (Rule 56(a)(1)

Statement, ¶ 29; Answer, ¶¶ 48 and 49.)

12.   On November 6, 2017, the Defendant filed a motion to set aside the 2017 Jury

Verdict, alleging that it was an invalid quotient verdict and was not supported by the evidence.

The motion also claimed that the verdict was not properly calculated and was excessive.  (Rule

56(a)(1) Statement, ¶ 9.)

13.   On March 22, 2018, the Superior Court issued a written Revised Memorandum of

Decision Re Defendants' Motion to Set Aside Jury Verdict and concluded the 2017 Jury Verdict

was a valid verdict (Rule 56(a)(1) Statement, ¶ 12), but the damages awarded were excessive

(the "2018 Judgment").  (Rule 56(a)(1) Statement, ¶ 13.)  The 2018 Judgment determined that:

(i) the 2017 Jury Verdict damages award of $1,721,000.00 for breach of fiduciary duty (Count

One) was reasonable under the circumstances, but that damages award of $1,316,000.00 for

tortious interference was duplicative of the damages under Count One and therefore must be set aside as a matter of law pursuant to Conn. Gen. Stat. §§ 52-218(a) and 52-228(b); and (ii) reduced the total damages to $2,276,000.00 – the combined amount of the award of $1,721,000.00 for breach of fiduciary duty and $555,000.00 for statutory theft.  (Rule 56(a)(1) Statement, ¶ 15.)

14.  On March 4, 2021, a subsequent hearing was held in the Superior Court.  On the same day, the Superior Court issued a final judgment awarding the Plaintiff's attorneys' fees in the amount of $151,749.50 and costs in the sum of $25,875,40 (the "2021 Judgment"). (Rule 56(a)(1) Statement, ¶ 17.)

15.  The total damages award in the 2017 Jury Verdict, the revised damages award in the amount of $2,276,000.00 set forth in the 2018 Judgment, and attorney's fees award in the amount of $151,749.50 and costs in the amount of $25,875.40, set forth in the 2021 Judgment, constitute a final judgment in the total amount of $2,453,624.90.  (Rule 56(a)(1) Statement, ¶ 19.)

## V.    DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) is made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056.  Rule 56 directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)

(emphasis in original).  "Upon consideration of a motion for summary judgment, 'the judge's function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *In re Delaney*, 504 B.R. at 746 (quoting *Anderson*, 477 U.S. at 249).  "[T]he court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Mex. Constr. & Paving v. Thompson (In re Thompson)*, 511 B.R. 20, 24 (Bankr. D. Conn. 2014) (quoting *Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999)).

At the summary judgment stage, the moving party must show there are no genuine issues of material fact, and the court must consider all facts in the light most favorable to the non-moving party.  *Conn. Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98–99 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1547 (2018) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992); *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015)).  Once the moving party has met its burden, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Official Comm. of Unsecured Creditors of Affinity Health Care Mgmt., Inc. v. Wellner (In re Affinity Health Care Mgmt., Inc.)*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).  "[A] non-moving party must point to more than a mere 'scintilla' of evidence in order to defeat a motion for summary judgment."  *Id.* (quoting *Gavey v. Homebound Mortg., Inc.,* 547 F.3d 158, 163 (2d Cir. 2008).

### B.  General Collateral Estoppel Standards

The Plaintiff argues the 2017 Jury Verdict, the 2018 Judgment, and the 2021 Judgment should be given preclusive effect in this adversary proceeding.  "It is well settled that preclusion principles apply in bankruptcy proceedings, and that the doctrine may be used to establish the non-dischargeability of a debt."  *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 100 (2d Cir.

8

2019) (citing *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006)); *In re Delaney*, 504 B.R. 738

(citing *Grogan v. Garner*, 498 U.S. 279, 284 (1991)).  "When determining the preclusive effect

of a state court judgment, a court must apply the preclusive law of the rendering state." *Mex.*

*Construction and Paving v. Thompson (In re Thompson),* 511 B.R. 20, 25 (Bankr. D. Conn.

2014) (quoting *Faraday v. Blanchette,* 596 F.Supp. 2d 508 (D. Conn. 2009).

 Under Connecticut law, "collateral estoppel means simply that when an issue of ultimate

fact has once been determined by a valid and final judgment, that issue cannot again be litigated

between the same parties in any future lawsuit . . . Issue preclusion arises when an issue is

actually litigated and determined by a valid and final judgment, and that determination is

essential to the judgment." *Cumberland Farms, Inc. v. Town of Groton,* 262 Conn. 45, 58, 808

A.2d 1107, 1116 (2002).  To apply collateral estoppel, "the party seeking to invoke collateral

estoppel must establish that '(1) the identical issue was raised in a previous proceeding; (2) the

issue was actually litigated and decided in the previous proceeding; (3) the party had a full and

fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a

valid and final judgment on the merits." *Snyder*, 939 F.3d at 100 (quoting *Ball v. A.O. Smith

Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)) *see also Village Mortgage Co. v. Veneziano (In re

Veneziano)*, 615 B.R. 666, 674 (Bankr. D. Conn. 2020) (quoting *Faraday*, 596 F. Supp. 2d at 515

and *Automated Salvage Transp. Co. v. Swirsky (In re Swirsky)*, 372 B.R. 551, 562 (Bankr. D.

Conn. 2006)).

### C.  The Preclusive Effect of the 2017 Jury Verdict, the 2018 Judgment, and the 2021 Judgment on the Plaintiff's Motion for Summary Judgment

 It is undisputed that the Superior Court Action resulted in the 2017 Jury Verdict against

the Defendant for breach of fiduciary duty, conversion, and statutory theft.  Furthermore, the

damages awarded as part of the 2017 Jury Verdict, which were later amended and supplemented in the 2018 Judgment and the 2021 Judgment, are final judgments.

The jury in Superior Court Action was required to make its findings using the preponderance of the evidence standard,[1] which is the same standard of evidence required in a section 523(a) action determining the dischargeability of a debt.  *Grogan*, 498 U.S. at 291.  The Court will address the Plaintiff's collateral estoppel arguments in turn below.

### 1. Collateral estoppel effect of the conversion and statutory theft verdicts on the section 523(a)(2)(A) cause of action.

Count One alleges that the debt owed to the Plaintiff is non-dischargeable pursuant to section 523(a)(2)(A) because it was obtained through false pretenses, a false representation, or actual fraud.  The Plaintiff asserts that the Defendant is collaterally estopped from arguing that the conversion and statutory theft verdicts are dischargeable because the Superior Court determined the debts were obtained by "false pretenses, false representation, or actual fraud."

### a. The identical issues were not raised in the Superior Court Action.

In order for collateral estoppel to apply to the section 523(a)(2)(A) claim, the Plaintiff must establish that the issues raised in the Superior Court Action and in Count One are identical. To establish a prima facie case of conversion under Connecticut law, a plaintiff must demonstrate (1) the material at issue belonged to the plaintiff; (2) that the defendant deprived the plaintiff of that material for an indefinite period of time; (3) that the defendant's conduct was unauthorized; and (4) that the defendant's conduct harmed the plaintiff.  *Stewart v. King*, 121 Conn. App. 64, 75 n. 4 (2010) (citing *News America Marketing In-Store, Inc. v. Marquis*, 86

---

[1] *See* Superior Court Action, Interrog. to the Jury, Docket No. 247.  The Connecticut Supreme Court has held that the preponderance of the evidence standard applies to statutory theft claims brought under Conn. Gen. Stat. § 52-564.  *Stuart v. Stuart*, 996 A.2d 259, 268, 291 Conn. 26, 41 (Conn. 2010).

Conn. App. 527, 545, 862 A.2d 837 (2004), *aff'd*, 276 Conn. 310, 885 A.2d 758 (2005)).

Furthermore, the Connecticut Supreme Court has stated, "statutory theft is the stealing of

another's property or the knowing receipt and concealment of stolen property . . . [s]tatutory

theft, however, requires an element over and above what is necessary to prove conversion,

namely, that the defendant intentionally deprived the complaining party of his or her property."

*Mystic Color Lab, Inc.*, 284 Conn. at 419.

　　To prevail on a section 523(a)(2)(A) claim, a plaintiff must establish five elements: (1)

the defendant made a false representation; (2) at the time the representation was made, the

defendant knew it was false; (3) the defendant made the representation with intent to deceive the

plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff sustained

loss or damage as a proximate consequence of the false representation. *See Parlex Associates v.*

*Deutsch (In re Deutsch)*, 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017).

　　The elements of conversion and statutory theft under Connecticut law are not the same as

the elements of obtaining a debt through false pretenses, false representation, or actual fraud

under section 523(a)(2)(A).  *See 3N International, Inc. v. Carrano (In re Carrano)*, 530 B.R.

540, 557–58 (Bankr. D. Conn. 2015).  "False pretenses involve a misrepresentation *implied* from

purposeful conduct intended to create a false impression." *Id.* at 557 (quoting *Peregrine Falcons*

*Jet Team, A Nevada Corp. v. Miller (In re Miller),* 282 B.R. 569, 575 (Bankr. D. Conn. 2002)

(emphasis in original).  "An implication of false pretenses arises when a debtor, with the

intention to mislead a creditor, engages in '"a series of events, activities or communications

which, when considered collectively, create a false and misleading set of circumstances . . .or

understanding of a transaction, by which [the] creditor is wrongfully induced by [the] debtor to

transfer property or extend credit . . . ." *Carrano,* 530 B.R. at 557.  A "false representation" for

the purposes of 523(a)(2)(A) is defined as a misleading statement made with intent to deceive, in order for the plaintiff to turn over money. *Options Unlimited, Inc. v. McCann (In re McCann)*, 634 B.R. 207 (Bankr. D. Conn. 2021) (internal citations omitted). Under collateral estoppel, a false representation may be found where the state court actually decided a common law fraud claim under Connecticut law, *see McCann*, or a claim of intentional misrepresentation under Connecticut law, *see Metcoff v. Parella (In re Parella)*, 622 B.R. 559, 567 (Bankr. D. Conn. 2020). Alternatively, "'[a]ctual fraud' is any intentional deceit, artifice, trick, or design used to circumvent and cheat another, *i.e.* something said, done, or omitted with the design of perpetrating what is known by the debtor to be a deception." *In re Miller*, 282 B.R. at 575.

In this adversary proceeding, there is no evidence in the record or in the Rule 56(a)(1) Statement to support the conclusion that the jury determined that the debt owed to the Plaintiff was obtained through false pretenses, a false representation, or actual fraud when the Defendant committed conversion and statutory theft.

Accordingly, the Plaintiff's claim that there is an identity of issues between the conversion and statutory theft verdicts and the section 523(a)(2)(A) cause of action is not supported by the record.

### b.  The remaining collateral estoppel factors are also not present.

Because there is no identity of issues between the conversion and statutory theft verdicts and the section 523(a)(2)(A) cause of action, there was no opportunity in the Superior Court Action to fully and fairly litigate whether the debt was obtained by false pretenses, a false representation or actual fraud. In addition, these issues were not actually decided in the Superior Court Action. Finally, whether the debt was obtained by false pretenses, a false representation, or actual fraud did not need to be determined to support the conversion and statutory theft

12

verdicts, which are final judgments.  For all of these reasons, collateral estoppel does not apply to Count One.  Therefore, summary judgment is denied as to Count One.

**2. Collateral estoppel effect of the breach of fiduciary duty verdict on the Count Two section 523(a)(4) cause of action.**

The Plaintiff asserts the Defendant is collaterally estopped from arguing the breach of fiduciary duty verdict is dischargeable because the 2017 Jury Verdict determined the Defendant breached his fiduciary duty under Connecticut law.  Count Two seeks to have the debt owed by the Defendant deemed non-dischargeable pursuant to section 523(a)(4), because the debt arises from a fraud or defalcation while acting in a fiduciary capacity.  Therefore, the Court must determine if collateral estoppel applies to Count Two based on the breach of fiduciary duty verdict in the Superior Court Action.

**a. Identical issues were raised in the Superior Court Action.**

The Plaintiff argues that the issues raised in the breach of fiduciary duty claims in the Superior Court Action are identical to those raised in Count Two.  To determine if the Plaintiff is correct, the Court must first look to Connecticut law.

When the 2017 Jury Verdict was rendered, Connecticut law required a plaintiff to prove a claim of breach of fiduciary duty by establishing: (1) a fiduciary relationship existed which gave rise to a duty of loyalty and an obligation to act in the best interests of the plaintiff, and an obligation to act in good faith in any matter relating to the plaintiff; (2) the defendant advanced his or her own interests to the detriment of the plaintiff; (3) the plaintiff sustained damages; and (4) the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty.

*See Rendahl v. Peluso*, 173 Conn. App. 66, 100 (2017) (overruled in part by *Barash v. Lembo*, 348 Conn. 264 (2023)).[2]

To prevail on the Count Two section 523(a)(4) claim in this adversary proceeding, the Plaintiff must prove two elements: (i) the existence of a fiduciary relationship between the Plaintiff and the Defendant; and (ii) a fraud or defalcation was committed by the Defendant in the course of that relationship. *In re Fritzson*, 590 B.R. 178, 192 (Bankr. D. Conn. 2018); *see also Mirarchi v. Nofer (In re Nofer)*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014).

Although the elements of breach of fiduciary duty under Connecticut law are not identical to the elements of a section 523(a)(4) claim, the issues to be decided under Connecticut law and under section 523(a)(4) are the same. Under Connecticut law, once a determination is made that a fiduciary relationship exists that gives rise to a duty, the defendant must also have advanced his or her own interests to the detriment of the plaintiff. Under section 523(a)(4), a defendant must have at the very least committed a defalcation when acting in a fiduciary capacity. As the United States Supreme Court held in *Bullock,* a defalcation under section 523(a)(4) includes the fiduciary's conscious disregard (or willful blindness to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. *Bullock v. Bankchampaign, N.A.*, 569 U.S. 267, 274 (2013).

Based upon the Defendant's "admitted breach of fiduciary duty that caused a harm" to Thornton and Home Dental, the jury had to find the Defendant's actions met the requirements of

---

[2] The elements of breach of fiduciary duty set forth in *Rendahl* are relevant to the 2017 Jury Verdict as applied to section 523(a)(4)). However, the Connecticut Supreme Court in *Barash v. Lembo*, 348 Conn. 264 (2023) overruled *Rendahl* in part, holding that breach of fiduciary duty does not require proof of self-dealing for a trustee and suggested the elements for breach of fiduciary duty –in all situations, not just for trustees– should be "(1) existence of a fiduciary relationship, giving rise to a duty, (2) breach of that duty, (3) causation, and (4) damages," aligning with the "substantial majority of other jurisdictions."

a breach of fiduciary duty under Connecticut law.[3]  The 2017 Jury Verdict established that the

jury found the Defendant was liable for breach of fiduciary duty that caused a harm due to the

Defendant's conduct while acting in a fiduciary capacity.

To prevail on the section 523(a)(4) cause of action in this adversary proceeding, the

Plaintiff would need to prove a fiduciary relationship existed between the Defendant and

Plaintiff, and that the Defendant committed a defalcation during the course of that relationship.

The 2017 Jury Verdict already determined that a fiduciary relationship existed when the

Defendant was president of Thornton and Home Dental.  The jury also found that defalcation

occurred during the course of that fiduciary relationship when the Defendant advanced his own

interests to the detriment of Thornton and Home Dental.  Accordingly, the issues the Plaintiff

would need to prove in this Court to prevail on a 523(a)(4) cause of action are identical to and

are the same issues decided in the Superior Court Action.

Because the issues raised in the Superior Court Action regarding breach of fiduciary duty

and those raised in the Count Two section 523(a)(4) action are the same, the first prong of

collateral estoppel is satisfied.

### b.  The issues were actually litigated and decided in the Superior Court Action.

After a seven day trial, the 2017 Jury Verdict decided the breach of fiduciary duty issues

and also decided the extent of damages caused by the breach.  (*See,* Superior Court Action,

Interrog. to the Jury, Docket No. 247.)  It is clear that the parties actually litigated those issues

and the jury actually decided the Defendant owed a fiduciary duty to the Plaintiff, breached that

---

[3] *See* 2017 Jury Verdict (ECF No. 1, Ex. 3), Interrog. to the Jury, Docket No. 247 at p. 1, and the 2018 Judgment, at p. 17. ("With respect to breach of fiduciary duty, the jury charge advised the jury (at page 16) that it should determine if plaintiffs proved, by a preponderance of the evidence, that Mr. Thornton's [the Defendant's] breach of fiduciary duty, which was admitted, caused the plaintiffs' damages.")

duty while acting in his fiduciary capacity, and that breach caused a harm to Thornton and Home Dental. Therefore, the second prong of collateral estoppel is satisfied with respect to Count Two.

### c. The parties had a full and fair opportunity to litigate the issues raised in the Superior Court Action.

The third prong of collateral estoppel requires that the parties had a full and fair opportunity to litigate the issues in a previous proceeding. As noted above, it is uncontested that the parties had an opportunity to litigate the issues raised by the breach of fiduciary duty claim. In fact, it would be difficult to assert that the parties did not have a full and fair opportunity to litigate these issues because, among other things, a seven day trial was held in the Superior Court. Therefore, the parties had a full and fair opportunity to litigate the issues in the Superior Court Action.

### d. Resolution of the issues raised in the Superior Court Action were necessary to support a valid and final judgment on the merits.

The breach of fiduciary duty claim was resolved by 2017 Jury Verdict. The resolution of the breach of fiduciary duty claim was necessary to support a valid judgment on the merits of the claim in the Superior Court Action. The 2017 Jury Verdict and all subsequent judgments are final judgments. Because the resolution of issues in the Superior Court Action were necessary to support a valid and final judgment on the merits of the breach of fiduciary claim, the fourth prong of collateral estoppel applies to Count Two.

In light of the foregoing, collateral estoppel applies as to the Count Two section 523(a)(4) cause of action. There are no genuine issues of material fact at issue to be decided with respect to Count Two. Accordingly, under preclusion principles, the Motion for Summary Judgment is granted as to the Count Two section 523(a)(4) cause of action.

**3. Collateral estoppel effect of the 2017 Jury Verdict on the Count Three section 523(a)(6) cause of action.**

The Plaintiff argues that the Defendant is precluded from claiming the statutory theft verdict is dischargeable because the 2017 Jury Verdict determined the Defendant committed statutory theft which harmed the Plaintiff, Thornton, and Home Dental. Count Three alleges that the Defendant's debt is non-dischargeable pursuant to section 523(a)(6) because the debt was for a willful or malicious injury by the Defendant to the Plaintiff or the Plaintiff's property.

**a. Identical issues were raised in the Superior Court Action.**

The Plaintiff asserts that the statutory theft issues raised in the Superior Court Action are identical to the issues asserted in the Count Three section 523(a)(6) cause of action. Connecticut law provides that statutory theft is when a person ". . . steals any property of another, or knowingly receives and conceals stolen property . . ." Conn. Gen. Stat. § 52-564 (West 2024.) The Connecticut Supreme Court has held that statutory theft is not only an intentional tort, but is considered "synonymous with the crime of larceny." *See Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,* 761 A.2d 1268, 1281, 255 Conn. 20, 43–44 (Conn. 2000) (*citing Suarez-Negrete v. Trotta*, 47 Conn. App. 517, 520-21, 705 A.2d 215 (1998)). Under Connecticut law, a person commits larceny "when, with the intent to deprive another of property, he wrongfully takes, obtains, or withholds such property from an owner." *See* Conn. Gen. Stat. Ann. § 53a-119 (West 2024).

Section 523(a)(6) requires a plaintiff to establish that the debt was (1) for an injury, which injury was (2) willful and (3) malicious. "Willful" and "malicious" are separate elements. *See, e.g., Guggenheim Capital LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 802-03 (Bankr. E.D.N.Y. 2014); *In re Delaney*, 504 B.R. at 747–750.

The first element of 11 U.S.C. § 523(a)(6)—that the debt was for an injury—was established in the 2017 Jury Verdict because statutory theft requires, among other elements, that

17

the defendant "*steals* the property of another." Here, the Defendant was found liable for statutory theft because he wrongfully took property of Thornton and Home Dental with intent to deprive both entities of their property.[4] This deprivation amounted to an injury. The issue of whether an injury occurred raised in the section 523(a)(6) claim is the same issue the jury determined in the Superior Court Action when it entered the statutory theft verdict against the Defendant.

The second element of a section 523(a)(6) claim, willfulness, was also established by the statutory theft verdict. As the United States Supreme Court held in *Kawaauhau v. Geiger*, willfulness in section 523(a)(6), requires "not merely a deliberate or intentional *act* that leads to injury" but rather "a deliberate or intentional *injury*." 523 U.S. 57, 61 (1998). Quoting the Restatement (Second) of Torts, the Supreme Court noted that "[i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply the 'the act itself.'" *Id.* at 61-62 (emphasis in original). The 2017 Jury Verdict determined that the Defendant committed statutory theft under Connecticut law, which required a finding that the Defendant stole the property of another, *intentionally* depriving the Plaintiff of his property.[5] The issues determined by the jury are same issues regarding willfulness that would have to be determined in this Court.

Turning to whether the injury was malicious, the United States Court of Appeals for the Second Circuit has defined malicious to mean "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87–88 (2d Cir. 1996). The 2017 Jury Verdict found the Defendant committed statutory theft, which the Connecticut Supreme Court has defined as "the stealing of

---

[4] *See* Superior Court Action, Interrog. to the Jury, Docket No. 247 at p. 2. ("Did Defendant Brett Thornton *intentionally deprive* the plaintiffs Thornton International Inc. and Home Dental Care, Inc. of the property?"(emphasis added))

[5] *See Id.*

another's property or the knowing receipt of and concealment of stolen property." *Mystic Color Lab,* 934 A.2d at 234. As mentioned above, Connecticut Supreme Court has also defined statutory theft as "synonymous" with the crime of larceny, *see Hi-Ho Tower*, 255 Conn. At 44, 761 A.2d 1268, which is defined as "when, with the intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains, or withholds such property from an owner." *See* Conn Gen. Stat. § 53a-119. In the 2017 Jury Verdict, the jury found the Defendant stole the property of Thornton and Home Dental. When considered in the context of the totality of the circumstances presented to the jury in the Superior Court Action, the Defendant's conduct amounts to a malicious injury under section 523(a)(6). *Snyder*, 939 F.3d at 104 (quoting *Ball*, 451 F.3d at 69 and *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 402 (Bankr. E.D.N.Y. 2005)).

The issues the Plaintiff would need to prove in this Court to prevail on a 523(a)(6) cause of action are the same issues that were decided in the Superior Court Action. Therefore, the first prong of collateral estoppel is met with regard to Count Three.

**b. The issues raised were actually litigated and decided in the Superior Court Action.**

The statutory theft issues raised in the Superior Court Action were actually litigated and decided by the jury in the 2017 Jury Verdict. The Defendant appeared and defended these issues before, during, and after the seven day trial.

**c. The parties had a full and fair opportunity to litigate the issues in the Superior Court Action.**

The parties had a full and fair opportunity to litigate the statutory theft issues in the Superior Court Action. The Defendant does not contest, and record establishes that he would not

be able to contest, that he appeared and defended these issues in the Superior Court Action both during and after the seven day trial.

>    **d. Resolution of the issues raised were necessary to support a valid and final judgment on the merits in the Superior Court Action.**

In reaching the 2017 Jury Verdict, the jury had to resolve the issue of the whether the Defendant committed statutory theft. The jury found that the Defendant committed statutory theft. In order to reach that determination, the jury had to find the Defendant acted without authorization and his actions caused an injury to the Plaintiff, Thornton, and Home Dental because he removed property of Thornton and Home Dental with the intent to deprive them of their property.

The resolution of the statutory theft claim in the Superior Court Action was necessary to support a valid judgment on the merits. The 2017 Jury Verdict and all subsequent judgments are final judgments. Because the issues decided by the statutory theft verdict in the Superior Court Action were necessary to support a valid and final judgment on the merits, the fourth prong of collateral estoppel applies to Count Three.

Accordingly, under preclusion principles, the Motion for Summary Judgment is granted as to the Count Three section 523(a)(6) cause of action.

## VI.   <u>CONCLUSION AND ORDER</u>

For the reasons enumerated above, there is not an identify of issues between the 2017 Jury Verdict and Count One section 523(a)(2)(A) cause of action in this adversary proceeding. Because collateral estoppel does not apply to Count One, summary judgment cannot enter as to Count One.

Based upon the application of collateral estoppel to Counts Two and Three, there are no genuine issues of material fact to be tried as to the sections 523(a)(4) and 523(a)(6) claims and the Plaintiff is entitled to a judgment on those claims as a matter of law.  Therefore, it is hereby

**ORDERED:**  The Motion for Summary Judgment is **DENIED** as to the Count One claim that the debt arose from obtaining money, property, or services by false pretenses, or representations, or actual fraud under section 523 (a)(2)(A); and it is further

**ORDERED**:  The Motion for Summary Judgment is **GRANTED** as to Counts Two and Three.  The Defendant Brett Thornton's debt to the Plaintiff Robert D. Russo, Executor of the Estate of Thomas F. Thornton, in the amount of $2,276,000.00 as found in the 2018 Judgment and $151,749.50 in attorney's fees and $25,875.40 in costs as found in the 2021 Judgment issued in the matter of *Robert D. Russo, Executor of the Estate of Thomas F. Thornton et al. v. Brett Thornton et al.*, Docket No. FST-CV15-6025330-S, including any interest allowable under applicable non-bankruptcy law, is deemed **NON-DISCHARGEABLE** pursuant to sections 523(a)(4) and 523(a)(6).

Dated at Bridgeport, Connecticut this 28th day of February, 2024.



Julie A. Manning
United States Bankruptcy Judge
District of Connecticut